IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SEAN M. M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 17-cv-964-CJP[2] |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in July 2013, alleging disability beginning on September 1, 2010. After holding an evidentiary hearing, ALJ Koren Mueller denied the application on June 27, 2016. (Tr. 21-33). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 17.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1.     Whether the ALJ erred in failing to identify and reconcile apparent conflicts with the DOT; and

2.   Whether the ALJ erred in failing to elicit evidence of availability of jobs existing in significant numbers in either the region where plaintiff lives or several regions of the country

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.   For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. § 423(d)(3).   "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an

alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative

answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Mueller followed the five-step analytical framework described above. She determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. He was insured for DIB only through December 31, 2015. The ALJ found that plaintiff had severe impairments of urethral stricture, degenerative disc disease, osteoarthritis, obstructive sleep apnea, obesity, depression, and anxiety. She further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the sedentary exertional level, limited to occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; no operation of foot controls with the right lower extremity; occasional exposure to environmental irritants; no exposure to hazards such as unprotected heights or dangerous machinery. He was able to perform simple, routine tasks involving making simple work-related decisions with few work-place changes. He was unable to perform production rate pace or meet strict quota requirements, but will meet all end-of-day goals. He was able to interact occasionally with the general public, and frequently with coworkers, and supervisors.

The ALJ found that plaintiff was unable to perform his past relevant work. Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because he was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's arguments, the Court will omit a discussion of the medical evidence.

Plaintiff was represented by an attorney at the evidentiary hearing in March 2016. (Tr. 40).

Plaintiff testified regarding his symptoms, medical treatment, and daily activities. (Tr. 42-68).

Plaintiff had worked in the past as a manager at a U-Haul facility. He also worked for Sunbelt, which rented construction equipment, and Snoke Equipment Rental. (Tr. 51-55).

A vocational expert (VE) also testified. The ALJ asked a hypothetical question which corresponded to the RFC assessment. The VE testified that this person could not do plaintiff's past work. She identified three other jobs that could be done by a person with plaintiff's RFC: plastic design applier (DOT 690.686-046), weave defect charting clerk (DOT 221.587-042), and service rater (DOT 214.587-010). The VE testified to the numbers of jobs "in the national economy" for each. (Tr. 70-73).

The ALJ did not ask any questions about conflicts with the DOT.

Plaintiff's counsel asked no questions of the VE. (Tr. 73).

## Analysis

As was noted above, at step five of the sequential analysis, if the claimant is not able to perform his past work, the Commissioner bears the burden of showing

that he is capable of performing other jobs that exist in significant numbers in the economy.

In making the step five determination, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy.[3] An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See, 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between her testimony and the information in the DOT:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as  part of the adjudicator's duty to fully develop the record, the  adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR-004p, 2000 WL 1898704, at *2.

The Seventh Circuit agrees that, pursuant to SSR-004p, an ALJ has an

---

[3] The Seventh Circuit has pointed out the inadequacies of the DOT as a source of information. "A further problem is that the job descriptions used by the Social Security Administration come from a 23–year–old edition of the Dictionary of Occupational Titles, which is no longer published, and mainly moreover from information from 1977–37 years ago. No doubt many of the jobs have changed and some have disappeared. We have no idea how vocational experts and administrative law judges deal with this problem." *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014).

affirmative duty to ask the VE whether her testimony conflicts with information contained in the DOT.   *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).

Here, the ALJ did not ask the VE whether her testimony conflicted with the DOT.   The ALJ included in her decision the usual boilerplate statement that "Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."   (Tr. 32).   She gave no explanation of how she determined that.

If the ALJ had actually consulted the DOT descriptions of the jobs that the VE testified to here, she would have discovered that the third job, service rater (DOT 214.587-010), is a job in the telephone and telegraph industry.   The duties of the job are "Counts number of words in telegrams dispatched from telegraph office, consults rates in rate book, and marks charges on duplicates of messages for use in billing customers."   1991 WL 671894.   The VE testified, and the ALJ found, that there are 490,860 service rater jobs in the national economy.   This is impossible, as telegrams have not been sent in this country since 2006.   See, https:// www. reference.com/government-politics/ process-send-telegram-post office-28fd6b1bad 446f23, visited on August 2, 2018.

Plaintiff argues that the VE's testimony conflicted with information in the DOT because the hypothetical question and the VE's testimony concerned subjects not addressed in the DOT description of the three jobs identified by the VE. According to plaintiff, those subjects are "need for operation of foot controls with only one leg, whether tasks are routine, simplicity of decisions, the number of work

place changes, production rate pace, strictness of quota requirements, time-of-day assessment of goals, or the social contact limitations described by the ALJ." Doc. 11, pp. 8-9. The Commissioner agrees that the DOT is silent on these topics, but argues that the failure to ask about conflicts with the DOT was harmless because there is no conflict where the VE testifies about subjects not addressed in the DOT. Doc. 13, p. 4. Further, plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT at the hearing. Citing *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008), defendant argues that plaintiff must now show that any alleged conflicts were "obvious enough that the ALJ should have picked up on them without any assistance." Doc. 13, p. 8.

For each job title, the DOT specifies whether certain physical and mental activities are required, and, if so, the frequency with which they are required. The DOT does not, of course, speak to every possible aspect of the job title. Citing *Zblewski v. Astrue*, 302 F. App'x 488 (7th Cir. 2008), defendant argues that there is no conflict where the VE testifies about information that is not contained in the DOT.

In *Zblewski*, the ALJ asked the VE a hypothetical question that included a limitation to a sit/stand option. The ALJ there did not ask the VE whether his testimony conflicted with the DOT. Plaintiff argued that the ALJ erred because he failed to resolve the inconsistency between the VE's testimony and the DOT, based on the absence of a definition in the DOT of a sit/stand option. Noting that the ALJ has a duty to enquire into and resolve *apparent* conflicts, the Seventh Circuit disagreed, holding that "Because the DOT does not address the subject of sit/stand

options, it is not apparent that the testimony conflicts with the DOT." *Zblewski,*
302 F. App'x at 494.

Defendant reads *Zblewski* to mean that there is no conflict between the VE's
testimony and information supplied in the DOT if the DOT is silent on the subject of
the VE's testimony.   See, Doc. 18, p. 5.   In the Court's view, this is too broad a
reading.   Because the conflict had not been identified at the hearing in *Zblewski,*
the precise issue before the Court was whether the conflict was apparent such that,
under *Overman, supra,* the ALJ had a duty to enquire into the conflict.   In that
context, the Seventh Circuit's holding, quoted above, is more properly read as
meaning that the conflict was not apparent, and not, as defendant would read it,
that there was no conflict.   And, of course, *Zblewski* is a nonprecedential case.

Moreover, this Court's reading of *Zblewski* is in line with SSR 00-4p.   In the
section of the SSR entitled "Reasonable Explanations for Conflicts (or Apparent
Conflicts) in Occupational Information," the agency gives two examples of
"reasonable explanations for such conflicts."   The first example involves evidence
from a VE which includes "information not listed in the DOT."   The second
example is "The DOT lists maximum requirements of occupations as generally
performed, not the range of requirements of a particular job as it is performed in
specific settings. A VE, VS, or other reliable source of occupational information may
be able to provide more specific information about jobs or occupations than the
DOT."   SSR-004p, 2000 WL 1898704, at *2-3.   Thus, it would appear that the
agency's own interpretation is that there is a conflict between the VE's testimony
and the DOT where the VE testifies about information that is not contained in the

DOT.

This view is also supported by the agency's own "*Vocational Expert Handbook*," which instructs the VE that the ALJ is required to ask about any possible conflict with the DOT, and ask for "a reasonable explanation for the difference (or apparent difference) between your testimony and the description in the DOT." The *Handbook* gives examples of "apparent conflicts." One of these is "An ALJ's hypothetical may contain some type of reaching limitation, for example, occasional overhead reaching. You identify a job that requires some degree of reaching, although perhaps not overhead. There is an apparent conflict if a job requires reaching, and a hypothetical claimant that cannot perform overhead reaching." "*Vocational Expert Handbook*, 2017, https://www.ssa.gov/appeals/ public_experts/Vocational_Experts_(VE)_Handbook-508.pdf, pp. 37-39. Thus, the agency itself appears to have accepted the view that testimony on a subject not covered by the DOT is testimony that conflicts with the DOT.

The overhead reaching example cited in the *Handbook* appears to be taken from *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006), which also supports plaintiff's position. There, the ALJ failed to ask whether the VE's testimony conflicted with the DOT. One of the limitations in issue was a reaching limitation. The DOT describes requirements for reaching in general, but plaintiff was limited to only occasional reaching above shoulder level. The Seventh Circuit held that the ALJ has an affirmative duty to enquire about conflicts with the DOT. The Court noted, "It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ

11

should have resolved with the expert's help." *Prochaska*, 454 F.3d at 736. This language strongly suggests that a VE's testimony on a topic not covered in the DOT is testimony that conflicts with the DOT.

This Court finds that the VE's testimony conflicted with the DOT with regard to the aspects of the hypothetical question that are not addressed in the DOT. Of course, plaintiff's counsel did not object or raise the conflict at the hearing, and plaintiff therefore cannot raise it here unless the conflict was obvious enough that the ALJ should have recognized it without any prompting from plaintiff. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). An ALJ cannot be expected to be familiar with the details of all of the job description listed in the DOT. However, an ALJ who routinely handles social security disability hearings presumably has a working knowledge of DOT job descriptions; she should know that those descriptions do not cover the areas noted by plaintiff. Accordingly, when a VE testifies that a particular job can be performed by a person who is limited in those areas, it should be obvious to the ALJ that the VE's testimony conflicts with the DOT.[4]

It is not a meaningless formality to require the ALJ to ask the VE about conflicts with the DOT and to resolve them. If the testimony conflicts with the DOT or is about a subject not included in the DOT, the basis of the VE's testimony obviously cannot be the DOT. The testimony of a VE can constitute substantial evidence to support the ALJ's step five finding, but only if that testimony is reliable.

---

[4] Of course, the conflict with the DOT should also be apparent to an attorney experienced in social security disability law. Raising the issue at the hearing is obviously the better practice. Failing to do so runs the risk of being precluded from raising the issue later.

*McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004). Again, the Commissioner bears the burden of proof at step five. Although the Federal Rules of Evidence do not apply in administrative proceedings, expert witnesses still must use "reliable methods" to arrive at their conclusions. *Chavez v. Berryhill*, ___ F.3d ___, 2018 WL 3454065, at *5 (7th Cir. July 18, 2018); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). There is no way to assess the reliability of the VE's testimony where she testifies about a subject not included in the DOT and gives no other basis for her testimony.

Plaintiff's second argument is that the ALJ erred in relying on the VE's testimony regarding the number of jobs because she gave only estimates for the number of jobs "performed in the national economy" and not in several regions. However, under 20 C.F.R. § 404.1560(c)(2), "In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational capacity." The regulations specify that work exists in significant numbers in the national economy "when it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. § 404.1566(a). Again, plaintiff did not raise this issue at the hearing. Plaintiff offers no authority for the proposition that that the VE was not allowed to testify to the numbers in the national economy rather than giving a breakdown of numbers in several regions.

Because the ALJ erred at step five, this case must be remanded. Remand is

required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2010).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant time or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   August 2, 2018.**


**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**U.S. MAGISTRATE JUDGE**